The Chicago and Alton Railroad Company

*v.*

The City of Pontiac.

*Opinion filed November 8, 1897.*

1. Pleading—*condemnation—words "lands, right of way and tracks" include railroad "yard."* An allegation in a condemnation petition that the premises sought to be taken comprise part of the "lands, right of way and tracks" of a railroad company, is broad enough to cover and include the railroad yard.

2. Same—*condemnation petition need give only reasonably accurate description of property.* A condemnation petition which shows that the property to be taken is a strip of land sixty-six feet wide, and is an extension of a certain named street from the east side of a railroad right of way to the west side thereof, sufficiently describes the distance, width and location of the strip to be taken.

3. Same—*when petition need not aver inability to agree on compensation.* A condemnation petition to extend a public street across a railroad need not aver petitioner's inability to agree with the railroad company upon compensation.

4. Same—*what petition to extend street across railroad need not show.* A condemnation petition to extend a public street across a railroad need not aver the public necessity for the improvement, nor that the new use for street purposes is consistent with the old.

5. Same—*when petition sufficiently shows right of petitioner to condemn.* A condemnation petition to extend a public street across a railroad sufficiently shows the petitioner's right to condemn where a copy of the ordinance authorizing the improvement, certified by the city clerk under the corporate seal of the city, is attached to and made part of the petition.

6. Municipal corporations—*city council has power to determine necessity of improvement.* The city council has power to determine the necessity for an improvement, and its determination in that regard, in the absence of abuse of power, is final.

7. Same—*statute confers express authority on cities to extend streets across railroad.* Paragraph 89 of section 1 of the City and Village act (Rev. Stat. 1874, p. 222,) expressly confers upon city councils power, by condemnation or otherwise, to extend any street, alley or highway over and across any railroad track, right of way or land, including "yards," within the corporate limits.

8. Same—*what not exclusion of a prior use by railroad.* The fact that tracks are used by a railroad company for storing cars does not deprive a city of its right to extend its streets across such tracks,

nor will such extension amount to an exclusion of a prior use by the railroad company.

9. Eminent domain—*amount of compensation is the only question for the jury.* In condemnation cases the reasonableness of the ordinance and the necessity for the improvement thereby authorized are not matters for the consideration of the jury, as the only question for their determination is the amount of compensation to be awarded for the property taken or damaged.

10. Evidence—*testimony of witnesses as to necessity for improvement is inadmissible.* In a condemnation proceeding to extend a public street across railroad yards, testimony of witnesses as to whether the extension of the street was a public necessity is inadmissible.

11. Same—*what petitioner may show in proceeding to extend street across railroad.* In a condemnation proceeding to extend a public street across railroad yards, which extension the railroad company contends will greatly interfere with its business, the petitioner may show the amount of grain and stock shipped for the previous ten or fifteen years from an elevator and stock yard located near the intersection of the tracks with the proposed extension.

12. Same—*city need not offer ordinance in evidence to show right to condemn.* The question of the sufficiency of a condemnation petition by a city, as showing its right to condemn, is for the court, and the ordinance authorizing the proceedings need not be offered.

13. Damages—*expense of grading and planking for extended street not allowable as damages.* In a proceeding to extend a street across railroad yards the expense of grading and planking the right of way and tracks for street purposes cannot be allowed as damages but must be borne by the railroad company, in view of section 8 of the act on fencing and operating railroads. (Rev. Stat. 1874, p. 809.)

14. Same—*measure of damages on extending a street across railroad.* The measure of damages on extending a public street across railroad right of way and tracks is the decrease in value of the use for railroad purposes occasioned by the use for purposes of a street, such uses being exercised jointly.

15. Same—*compensation not to be awarded for imaginary or speculative damages.* Compensation is not to be awarded, in condemnation, for imaginary or speculative damages, nor for remote or inappreciable damages which may or may not arise in the future.

16. Instructions—*instruction stating abstract rule of law may be given if not misleading.* Though not error to refuse instructions stating abstract rules of law, yet such instructions may be given when they have no tendency to mislead the jury.

17. Appeals and errors—*when condemnation verdict will not be disturbed.* A verdict awarding damages in condemnation will not be disturbed on appeal, where the evidence was conflicting and the jury viewed the premises.

Appeal from the County Court of Livingston county; the Hon. C. M. Barickman, Judge, presiding.

This is a proceeding, begun by the filing of a petition in the county court by the city of Pontiac, alleging the passage of an ordinance by the city council of that city for the improvement of Prairie street therein by the extension of the same across the lands, right of way and tracks of the appellant company. The proceeding was instituted to condemn a strip of ground, sixty-six feet wide and extending east and west across said lands, right of way and tracks, so as thereby to connect the east and west parts of said street, and make it continuous and of uniform width east and west through said city. The petition prays, that any award therefor be paid by general taxation levied, assessed and collected from taxable property within the corporate limits of said city. It also prays to have the company's damages, sustained by such extension of the street across its property, ascertained by law, and that, when the same are paid and deposited, the city may be authorized to take possession of the premises for the uses and purposes of the street, and no other. A copy of the ordinance, passed by the city council providing for such improvement, and of the acts and proceedings of the council relating to the same, certified by the city clerk, and under the corporate seal of the city, was attached as an exhibit to the petition.

The appellant filed a cross-petition, setting up that the ground proposed to be taken was a part of its right of way, and that there were four tracks—two main tracks and two side-tracks—in use upon the same; that said ground was within the yard of the appellant used for switching, storing cars, loading and unloading merchandise and live stock; that the extension of the street across the yard and right of way of appellant would impair and damage the use of said yard by interfering with and rendering inconvenient the loading and unloading of stock;

that said extension would deprive the appellant of the use of said ground for warehouses, elevators, storehouses and other buildings, and damage and depreciate the same for such purposes; and the cross-petition claims that, if said street should be extended across said yard and right of way, damages should be assessed and paid to appellant pursuant to the statute, etc.

A trial was had before a jury. Testimony was introduced, and the sheriff took the jury to the ground, sought to be taken, to examine the same. The jury returned a verdict, finding that the extension of Prairie street across the land described in the petition would depreciate the value of said land for railroad purposes, and assessed the damages thereto at the sum of $200.00. A demurrer, which had been filed to the petition of the city by the appellant, was overruled by the court. A motion to dismiss the petition of the city was also made by the appellant, accompanied with an offer of proof in support of the motion to dismiss. This motion, together with the offer of proof to sustain the same, was overruled. Motions for a new trial and in arrest of judgment were also overruled. Thereupon judgment was entered by the court, permitting the city, upon payment to the county treasurer of Livingston county of the sum of $200.00 and costs, to extend Prairie street across the land, right of way and tracks of the railroad company as prayed in said petition. The present appeal is prosecuted from such judgment.

C. C. & L. F. Strawn, for appellant:

To condemn grounds already devoted to railroad yard purposes they must be described as yard grounds in the petition. *Railroad Co.* v. *Railroad Co.* 75 Ill. 113.

A condemnation petition should show that the compensation to be paid for or in respect of the property sought to be appropriated or damaged could not be agreed upon, as required by the statute. This is indispensable. Rev. Stat. chap. 47, sec. 2; *Railroad Co.* v. *Chamberlain,* 84

Ill. 333; *Booker* v. *Railroad Co.* 101 id. 333; *Bowman* v. *Railroad Co.* 102 id. 459.

One public corporation cannot take the franchise of another which is in use unless expressly authorized by the legislature, and then only by regular condemnation, and cannot take it at all if it will materially affect its use. *F. T. etc. Co.* v. *Railroad Co.* 53 Fed. Rep. 687.

The property proposed to be taken being already devoted to another necessary public use that will be destroyed by the new use, it is not subject to condemnation, because it is not imperatively necessary to the new use. *Railroad Co.* v. *Lake,* 71 Ill. 336; *Park Comrs.* v. *Armstrong,* 45 N. Y. 243; *Corporation* v. *County of Norfolk,* 6 Allen, 353; *Bridge Property* v. *County Comrs.* 103 Mass. 124; *Secombe* v. *Railroad Co.* 23 Wall. 108.

Property in actual use in the performance of the duties of a railroad corporation to the public cannot be taken under the powers granted by the present statutes of this State; otherwise if the property is not in actual use. *Railroad Co.* v. *Railroad Co.* 66 Ill. 174; *Railroad Co.* v. *Railroad Co.* 87 id. 317; *Railroad Co.* v. *Railroad Co.* 75 id. 117.

Lands or right of way occupied by a railroad company for its corporate purposes cannot be taken by another as right of way except for mere crossings, and then only for crossing purposes, and not for exclusive occupancy. If the taking will amount to exclusive occupancy the power of eminent domain cannot be exercised. *Railroad Co.* v. *Railroad Co.* 81 Ill. 523; *Railroad Co.* v. *Railroad Co.* 66 id. 174; *Cake* v. *Railroad Co.* 87 Pa. St. 307; *Pennsylvania Railroad Co.'s Appeal,* 93 id. 150; *Railroad Co.* v. *Railroad Co.* 118 Mass. 391; *Railroad Co.* v. *Railroad Co.* 124 id. 368; *Railroad Co.* v. *Williamson,* 91 N. Y. 552; *Hicock* v. *Hine,* 23 Ohio, 523; *St. Paul Co.* v. *St. Paul,* 30 Minn. 359.

The rule is not confined to the track or right of way, but is extended to the grounds occupied by all the appliances necessary for the successful operation of the road. *Railroad Co.* v. *Williams,* 54 Pa. St. 103 ; *Railroad Co.* v. *Rail-*

*road Co.* L. R. 5 Ir. Eq. 393; *St. Paul Co.* v. *St. Paul,* 30 Minn.
359; *Railroad Co.* v. *Railroad Co.* 8 Fed. Rep. 858; *Railroad
Co.* v. *Williamson,* 91 N. Y. 552.

A general statutory power conferred by a city charter
to take lands for public streets will not be presumed to
authorize the city to take land already lawfully appro-
priated for a depot building by a corporation duly em-
powered to acquire lands for such privileges. *St. Paul Co.*
v. *St. Paul,* 30 Minn. 359; *Railroad Co.* v. *Faribault,* 23 id.
167; *Railroad Co.* v. *Williamson,* 91 N. Y. 552.

A second appropriation of lands cannot be made when
the second appropriation is inconsistent with the first.
*Railroad Co.* v. *Commissioners,* 57 Fed. Rep. 945, and cases
cited; *Railroad Co.* v. *Commissioners,* 39 N. J. L. 28; *Railroad
Co.* v. *Railroad Co.* 8 Fed. Rep. 858; *In re Cleveland Railroad
Co.* 2 Pittsb. 348.

Z. F. Yost, for appellee:

Only such certainty in the description of land sought
to be condemned for a street is required as will enable a
surveyor to locate the street.    *Byron* v. *Blount,* 97 Ill. 62;
*Newman* v. *Chicago,* 153 id. 469.

A city cannot acquire private property for public im-
provement by private contract with the owner of prop-
erty.    It must be by condemnation proceedings.    *Railway
Co.* v. *Chicago,* 148 Ill. 41; *Railway Co.* v. *Chicago,* id. 509.

It is for city councils to determine what are local im-
provements and the necessity for same, and in the absence
of the abuse of the powers thus conferred their determin-
ation of those questions is final.    *Railway Co.* v. *Decatur,*
154 Ill. 173; *Railway Co.* v. *East St. Louis,* 134 id. 656.

In no case can the reasonableness of an ordinance or
the necessity for the improvement for which it provides
be submitted to a jury.    The only question for a jury in
a condemnation proceeding is the amount of compensa-
tion to be awarded for taking or damaging the property
sought to be taken or damaged.    *O'Hare* v. *Railway Co.*

139 Ill. 151; *DeBuol* v. *Railway Co.* 111 id. 499; *Railway Co.* v. *Railway Co.* 105 id. 110; *Smith* v. *Railroad Co.* 105 id. 511.

It does not matter that the ground sought to be taken or damaged for the extension of a street has been in prior public use. The new and joint use do not amount to an exclusion of the prior use, even though this prior use were for the storing of cars. *Railway Co.* v. *Chicago,* 151 Ill. 348.

Mr. Justice Magruder delivered the opinion of the court:

*First*—Appellant urges, that the demurrer filed by it to the petition of the city should have been sustained. Without considering the question, whether the filing of the cross-petition by appellant, and the introduction of testimony in support thereof, amounted to a waiver of the right to insist upon the grounds urged in favor of the demurrer, we will briefly consider such grounds as presented by counsel for appellant in their argument.

The petition is alleged to be defective upon the alleged ground, that the description of the premises therein is vague, uncertain and indefinite. We do not regard the petition as defective in this respect. The petition shows, that the premises to be taken comprise part of the lands, right of way and tracks of the appellant. The words, "lands, right of way and tracks," are broad enough to cover and include the yard of appellant. We have held in a number of cases, that the terms, "right of way," "tracks," and "lands," apply to tracks or lands devoted to the purpose of a railroad yard. (*Illinois Central Railroad Co.* v. *City of Chicago,* 156 Ill. 98; *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 151 id. 348; *Illinois Central Railroad Co.* v. *City of Chicago,* 141 id. 586). The petition and the ordinance attached to it show, that the strip of land to be taken is sixty-six feet wide and is an extension of Prairie street from the east side of the right of way of appellant to the west side of said right of way. This description is sufficiently accurate as to the distance, width

16ᵥ—11

and location. The statute only requires, that the petition shall contain, "a reasonably accurate description" of the property to be taken or damaged. (Rev. Stat. chap. 24, art. 9, sec. 5). There is no rule, which requires any greater certainty in the description than such certainty, as will enable a surveyor to readily find and locate the ground. Such certainty exists here. (*Village of Byron* v. *Blount,* 97 Ill. 62; *Newman* v. *City of Chicago,* 153 id. 469).

The petition is alleged to be defective upon the ground, that it does not show, that the compensation to be paid for the property sought to be condemned could not be agreed upon between the city and the appellant. This point is without force. Where the petition is filed under article 9 of the City and Village act to condemn land for a street, an allegation of inability to agree upon the compensation is unnecessary. (*Chicago and Northwestern Railway Co.* v. *City of Chicago,* 148 Ill. 141; *Cahill* v. *Village of Norwood Park,* 149 id. 156; *Lake Shore and Michigan Southern Railway Co.* v. *City of Chicago,* 148 id. 509; *City of Danville* v. *McAdams,* 153 id. 216; *Chicago and Northwestern Railway Co.* v. *Town of Cicero,* 154 id. 656).

The petition is also alleged to be defective upon the ground, that upon its face it does not show a public necessity for the extension of the street across the right of way, tracks and yard of the company. It was not necessary for the petition to allege facts showing such public necessity, inasmuch as the question of public necessity is a legislative question, and, therefore, the ordinance passed by the common council, providing for the improvement, was decisive of that question.

It is further alleged, that the petition is defective in not showing, that the new use of the property, sought to be condemned for a street, would be consistent with the railroad uses to which it was already devoted. We can not regard this objection as well taken. Lands, once taken for a public use pursuant to law under the right of eminent domain, can be appropriated by proceedings·

*in invitum* to a different public use, where there is legislative authority authorizing the same to be done. Such legislative authority exists in paragraph 89 of section 1 of article 5 of the City and Village act, which provides, that "the city council shall have power by condemnation or otherwise, to extend any street, alley or highway over or across, or to construct any sewer under or through any railroad track, right of way, or land of any railroad company within the corporate limits." (1 Starr & Cur. Stat. p. 472; *Illinois Central Railroad Co.* v. *City of Chicago*, 141 Ill. 586, and cases therein cited; *Chicago and Northwestern Railway Co.* v. *City of Chicago*, 151 id. 348). Moreover section 5 of article 9 of the City and Village act provides specifically what the petition shall contain. That section makes no requirement for an allegation as to the public necessity of the improvement, or as to the consistency between the new public use and the old public use. Therefore, "there is no proper place in this particular proceeding for either" allegation. (*City of Danville* v. *McAdams, supra*).

*Second*—Appellant claims that the court below erred in refusing to grant its motion to dismiss the petition of the city. It urges three grounds, upon which the court below erred in refusing to grant said motion. These three grounds are, first, that it would be an abuse of the power of eminent domain to permit the extension of the street across the land, yard and right of way and tracks of the company under the particular circumstances of this case; second, that there was no public necessity for the extension of the street; and third, that the appropriation of the ground for street purposes by extension of the street would be inconsistent with its present use, under the power of eminent domain, for railroad yard, right of way and track uses. None of the three reasons thus presented would have justified the court below in dismissing the petition. We are, therefore, of the opinion that there was no error in denying the motion to dismiss the same.

In the first place, it is for the legislative branch of the government alone to determine, whether the exigency exists, which calls for the exercise of the power of eminent domain, and for its delegation to municipal, or other public, corporations of its creation. (*O'Hare* v. *Chicago, Madison and Northern Railroad Co.* 139 Ill. 151; *Illinois Central Railroad Co.* v. *City of Decatur*, 154 id. 173). City councils have the power to determine what are local improvements and what is the necessity for the same, and where there is no abuse of the power thus conferred, their determination of the question is final. Unless there has been an abuse of power on the part of the city council in passing an ordinance for local improvements, the courts are powerless to interfere. The reasonableness of an ordinance, or the necessity of the improvement provided by it, cannot be submitted to a jury. The only question for a jury in a condemnation proceeding is the amount of compensation to be awarded for taking or damaging the property sought to be taken or damaged. (*O'Hare* v. *Chicago, Madison and Northern Railway Co. supra; DeBuol* v. *Freeport and Mississippi River Railway Co.* 111 Ill. 499; *Peoria and Pekin Union Railway Co.* v. *Peoria and Farmington Railway Co.* 105 id. 110; *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 id. 511; *Louisville and Nashville Railroad Co.* v. *City of East St. Louis*, 134 id. 656; *Illinois Central Railroad Co.* v. *City of Decatur*, 154 id., 173). In *Chicago and Northwestern Railway Co.* v. *Town of Cicero*, 154 Ill. 656, we said (p. 658): "The location of new streets or the extension of old streets is a matter committed by the legislature of the State to the local authorities of the town. It could only be an extreme case of oppression or outrage, that would justify interference by the court." In the case at bar, no case of oppression or outrage or unreasonableness is presented by the record.

As to the contention, that there was no public necessity for the extension of the street, the same rule exists as that already considered, which applies to the exigency

calling for the exercise of the power of eminent domain. In *DeBuol* v. *Freeport and Mississippi River Railway Co. supra*, we said (p. 503): "It is also insisted that the court erred in refusing to permit appellant to testify, that it was not necessary for petitioner to take a strip of land one hundred and fifty feet wide through his land. · That was not a question for the jury to pass upon. The only question for the jury was the amount of damages to be awarded appellant." Where the ·power to exercise the right of eminent domain has been delegated to an incorporation by the legislature, the exercise of that power by the incorporation within the scope and for the uses and purposes named in the legislative grant will not be a proper subject for judicial interference or control, unless to prevent a clear abuse of the power. (*Chicago and Eastern Illinois Railroad Co.* v. *Wiltse*, 116 Ill. 449).

As to the contention, that the new use as a street would be inconsistent with the present use by the railroad company, the true rule upon this subject has already been stated. Property already appropriated to a public use cannot be taken for another public use, unless power to make such second appropriation is granted by the legislature, either expressly or by necessary implication. As has already been stated, however, such power is expressly granted by paragraph 89 of section 1 of article 5 of the City and Village act. This paragraph is express authority for the extension of streets, by condemnation or otherwise, by the city authorities over the tracks, rights of way and lands of railroad companies, including railroad yards. In *Chicago and· Northwestern Railroad Co.* v. *City of Chicago*, 151 Ill. 348, the contention was, that the strip of land sought to be condemned there had been devoted to the specific public use of a railroad yard; and the point was made, that there was no express authority given by the legislature to the city to open streets across the land in question; but we there defined railroad yard to be a tract of ground, upon which are railroad tracks,

used for the purpose of receiving and storing cars when not in use, or used for the purpose of switching in the distribution of cars and engines, and in the making up of trains; it there appeared, that there were upon a hundred-foot strip of ground, at the point of the proposed street crossings, eight parallel railway tracks, connected by switches; and we held, that paragraph 89 constituted sufficient legislative authority to authorize the extension of a street across said railroad yard. Indeed, section 14 of article 11 of the constitution of 1870 provides that, "the exercise of the power and the right of eminent domain, shall never be so construed or abridged as to prevent the taking, by the General Assembly, of the property and franchises of incorporated companies already organized, and subjecting them to the public necessity the same as of individuals."

The ruling of the court below, therefore, in excluding testimony offered to sustain the motion to dismiss the petition was correct. By such testimony it was sought to show, that certain streets north of Prairie street, and certain streets south of Prairie street were already opened across the railroad tracks of the appellant. It was also sought to show, that there were no roads coming from the country west of the western terminus of Prairie street, requiring the opening of a street for the accommodation of travel upon such roads. All this testimony bore upon the question whether there was a public necessity for the improvement. As the passage of the ordinance by the common council was conclusive upon such question of public necessity, it was improper to attempt to establish it by parol proof. In *Smith* v. *Chicago and Western Indiana Railroad Co.* 105 Ill. 511, we said (p. 519): "It certainly was never contemplated by the legislature, that, where the petitioner has brought itself within the provisions of the statute, the right of condemnation can be defeated by simply showing, in the opinions of witnesses who may have no interest in or connection with the objects of the

proceeding, that the land sought to be condemned is not necessary for the purpose stated."

*Third*—It is claimed by the appellant, that the court below erred in admitting and excluding evidence. The first objection made is, that a witness on behalf of the petitioner, named Burke, was permitted to state the amount of grain shipped from a certain elevator within ten or fifteen years last past, and the amount of live stock shipped out of the stock pens, which were north of Prairie street. We cannot perceive, that such testimony was objectionable in view of the contentions made by the appellant upon the trial below. The elevator in question was not standing at the time of this suit, but had been previously burned down. It had stood south of Prairie street on the east side of the appellant's tracks. One of the witnesses says, that a part of it may have come close up to Prairie street. The witness, Burke, testified that not much grain had been shipped from the elevator for fifteen years before it was burned, and that not many cattle had been shipped from the yards. Appellant had claimed, that its business would be interfered with by the extension of the street across its tracks, and it was, therefore, important to inquire whether there was any business which could be interfered with.

There is proof, tending to show that the depot grounds were not part of the grounds through which Prairie street would run if extended; that the depot grounds were some three blocks south of Prairie street; that the freight depot was in the second block south of Prairie street; that the company had over six thousand feet of side-tracks in Pontiac to accommodate a traffic requiring only on an average about twenty-five cars per day; that the company owned a strip of ground in the city, one thousand feet long and one hundred feet wide, in addition to, and lying parallel with, and contiguous to, its right of way; and that the side-tracks were not upon the depot grounds. All of the appellant's witnesses testified,

that the west side-track was fifteen hundred feet long, and the east side-track seventeen hundred feet long. It cannot, therefore, be said, that the company, in view of the amount of business done, was crowded for yard room.

It is also objected, that the court refused to allow a witness to state how many roads there were leading from the city into the country from the west and north-west of the city. All this class of testimony bore upon the question as to whether there was a public necessity for the extension of the street. Inasmuch as this question was settled by the common council in the passage of the ordinance in accordance with the views already stated, it would have been improper to admit testimony upon that question. It is furthermore claimed, that a question addressed by the city to one of its witnesses, bearing upon the amount of damage that would be suffered by the appellant through the extension of the street, excluded or omitted any consideration as to the expense of grading and planking the right of way and tracks for street purposes, and assumed that such expense must be borne by the railroad company without compensation. No error was committed in this respect. In *Chicago and Northwestern Railway Co.* v. *City of Chicago*, 140 Ill. 309, a construction was given to section 8 of the act of March 31, 1874, in relation to fencing and operating railroads, which section provided that, "hereafter, at all of the railroad crossings of highways and streets in this State, the several railroad corporations in this State shall construct and maintain said crossings, and the approaches thereto, within their respective rights of way, so that at all times they shall be safe as to persons and property." It was there held, that in view of the requirement in section 8, the expense of grading and planking the right of way and tracks for street purposes where a street was extended across the tracks, should be borne by the company, because the same were necessary to the safety of the public and to prevent accident. Such items of expense were

held to be such only, as were involved in a compliance by railroad companies with a police regulation of the statute. This decision has been affirmed in many later cases. One of these cases is *Lake Shore and Michigan Southern Railway Co.* v. *City of Chicago*, 148 Ill. 509, where this court said (p. 518): "In *Chicago and Northwestern Railway Co.* v. *City of Chicago*, 140 Ill. 309, we held that the railway company was required to incur these various expenditures, where a street is extended across its right of way, in obedience to the police regulations of the State, and, therefore, that they were matters for which the company was not entitled to compensation. We still adhere to the rule established by that decision, and need only refer to the discussion of these questions, which will be found in the opinion delivered in that case."

The question addressed to the same witness is also objected to, on the ground that it excluded from the consideration of the jury the damage, that would accrue to the company by reason of being deprived of the use of the ground for loading and unloading its cars, and storing loaded and empty cars. It is also objected, that the question excluded from the consideration of the jury the value of the land for the erection thereon of depots, warehouses, grain elevators and other structures for railroad purposes, not then erected, but that might become necessary in the future. In reply to all this, it may be said that the court permitted testimony to be introduced by the appellant bearing upon all these questions, so that the appellant was not injured by any defect in that regard, which existed in the question addressed by the city to its own witness. The appellant introduced a witness, named Gray, who, when asked as a railroad man acquainted with such matters, for what uses the piece of ground in question was suitable as a part of the yard and right of way of the company, replied as follows: "Warehouses, platforms, elevators and general buildings that we are compelled to have to transact our business

at the different stations." The appellant was also allowed to introduce testimony to the effect, that the side tracks across the ground proposed to be taken were used for the delivery of freight, and for the storage of cars, and that, if the street was extended, the railroad company would be deprived of sufficient track room to load and unload and store its cars.

It is also objected, that appellant was not allowed to prove the expense, to which the company would be put by the extension of the street in the matter of planking the tracks, and grading the approaches thereto. For the reasons already stated there was no error in excluding this testimony.

It is also objected, that the court refused to permit one of appellant's witnesses to state the value of city lots in the vicinity of the ground, over which it was proposed to extend Prairie street. Testimony was admitted showing, that lots in that neighborhood on both sides of the tracks were worth only from $150.00 to $175.00; and appellant was permitted to show, that, if the street was extended, it would be obliged to obtain an equal amount of track room, for which it would probably have to pay some $400.00 or $450.00. But all this testimony, while operating to the advantage of the appellant, was improper. The measure of damages was not the value of the land embraced within the crossing. The measure of compensation in such cases is the amount of decrease in the value of the use for railroad purposes, caused by the use for the purpose of a street, such use for the purpose of the street being exercised jointly with the use of the company for railroad purposes. (*Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago,* 149 Ill. 457; *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 140 id. 309; *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 151 id. 348). In the recent case of *Chicago, Burlington and Quincy Railroad Co.* v. *City of Naperville,* 166 Ill. 87, it was said (p. 92): "Where a strip of land, occupied by a rail-

road company as right of way or depot grounds, is taken for a public street, it has been held in a number of cases, that the measure of compensation is the amount of decrease in the value of the use for railroad purposes, which would be caused by the use for the purposes of the street."

After a careful consideration of all the objections made by counsel to the admission and exclusion of evidence, we are of the opinion that no error was committed by the court below upon this branch of the case.

*Fourth*—It is also insisted by the appellant, that error was committed by the trial court in the giving and refusing of instructions. Nine instructions were given for the plaintiff, all of which are attacked by the appellant as being erroneous. The first instruction, given for the plaintiff, laid down the rule, that the measure of compensation to the railroad company is the amount of the decrease in the value for railroad purposes caused by the use for the purposes of a street, etc. As has already been shown, this instruction laid down a correct rule in regard to the measure of damages, as heretofore established by the decisions of this court. The appellant complains of the instruction as excluding from the consideration of the jury the use of the ground as a part of the company's yard, and as a place for the loading and unloading of cars, and for the storage of ponderous material, and for the storage of loaded and empty cars on side-tracks. This defect, if it be a defect, was cured by the character of the instructions which were given for the appellant, as will more fully appear when we come to the consideration of the latter instructions. The instructions given for the plaintiff, and those given for the defendant, are to be considered together as one charge. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Monaghan,* 140 Ill. 474; *Chicago and Eastern Illinois Railroad Co.* v. *Hines,* 132 id. 161). In the latter case, it was held that the entire law of a case need not be stated in a single instruction. When, therefore, all the instructions in this case are considered

together, it will be found that the jury were fully in-structed in reference to the matters about which appel-lant complains.

The second instruction given for the plaintiff told the jury that, as a matter of law, a railroad company takes its right of way subject to the right of the public to extend the public highways and streets across such right of way, without reference to whether the railroad company owns the right of way in fee or merely has an easement therein. The proposition embodied in this instruction has been laid down by this court in the following cases: *Chicago and Alton Railroad Co.* v. *Joliet, Lockport and Aurora Railway. Co.* 105 Ill. 388; *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 140 id. 309. Counsel for appellant concede, that the second instruction was proper enough as an abstract proposition of law, but was inapplicable to the case at bar. This court has held, that, although it is not error to refuse an instruction announcing an abstract principle of law, yet it is not error to give such an instruction, if it has no tendency to mislead the jury. (*Betting* v. *Hobbett,* 142 Ill. 72; *Devlin* v. *People,* 104 id. 504). In *Betting* v. *Hobbett, supra,* it was said: "Instructions stating a mere abstract principle are only objectionable when their tendency is to mislead the jury." It did not tend to mislead the jury here in view of all the instructions given.

The third instruction, given for the plaintiff, states that, although the jury may believe from the evidence that part of the land and right of way described in the petition is used by the appellant for storing cars, yet such fact does not deprive the city of the right to extend Prai-rie street over and across the same, and that such exten-sion of the street will not amount to the exclusion of the prior use of the property by the railroad company. The legal principle announced by the instruction is sustained by the case of *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 151 Ill. 348.

The fourth instruction told the jury, that the only question in this case was the amount of compensation, that should be awarded to the appellant for the extension of Prairie street, as prayed in the petition of the city; and that, whether or not such extension of said street was a wise or a necessary improvement, was not for their consideration. This instruction is correct under the views already expressed, and the authorities already referred to. (*O'Hare* v. *Chicago, Madison and Northern Railroad Co. supra; DeBuol* v. *Freeport and Mississippi River Railway Co. supra; Peoria and Pekin Union Railway Co.* v. *Peoria and Farmington Railway Co. supra*). Instructions five and six given for the plaintiff, told the jury that nothing should be allowed for imaginative or speculative damages, or such remote or inappreciable damages as the imagination may conjure up, and which may or may not arise at all in the future; and that "just compensation" means compensation for real not speculative damages, and that unless actual damages are shown, only nominal damages can be awarded to the appellant for the extension of the street as prayed in the petition. This instruction is in accordance with the holding of this court in *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago, supra*, and the cases therein cited. The seventh instruction told the jury, that, in awarding compensation, they were not to take into consideration any expense caused to the company by planking or graveling the road, etc. This instruction was correct in view of the authorities already referred to. The eighth instruction told the jury in substance, that they had nothing to do, in determining the amount of compensation, with the necessity or desirability of the proposed extension of Prairie street. Under the views already expressed, this instruction was not erroneous. (*Chicago and Northwestern Railway Co.* v. *Town of Cicero,* 154 Ill. 656). The ninth instruction given for the plaintiff told the jury, that the issue in this proceeding was as to the compensation the city should pay the railroad company for the right to

extend Prairie street across the lands, right of way and tracks of the company, from the east side of the same to the west side of the same for the width of sixty-six feet, subject to the joint use of said lands, right of way and tracks by the railroad company for railroad purposes, etc. This instruction is objected to because it assumes that the two uses, the one by the city for a street, and the other by the company for a railroad, were of such a nature that they could be jointly enjoyed. The instruction is supported by the decision in *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 151 Ill. 348.

The seventh instruction, given for the appellant, told the jury; that, if they believed from the evidence that the ground proposed to be taken was within the yard of the defendant, and that such yard was in use by the defendant for tracks, for the storage of cars, and the maintenance of freight houses, storehouses, warehouses, elevators and the like buildings and structures incident, convenient and necessary to the proper and successful operation of its railroad in the discharge of its duties as a common carrier to the public, and that any of the parts of said yard not within the limits of said parcel of ground so in use for such storage, etc., would be damaged, injured, destroyed or depreciated by devoting said parcel of ground to street uses, then the defendant should be allowed such sum of money as would reimburse it for such damages, injury, destruction or depreciation. The eighth instruction, given for the appellant, told the jury, that, if they believed from the evidence, that the use of the parts of the land described in the petition, not within the tracks of the defendant, crossing or traversing the same, were suitable for warehouse, elevator, storehouse, freight house or other like uses, except track uses, incident to the proper and successful operation by the defendant of its railroad, and that such uses were of substantial money value to the defendant, and such value has been shown by the evidence, and such uses would be destroyed or

damaged by the use of such parts of said land for street purposes, then the defendant should be allowed such sum as would compensate it for such destruction or damage. The ninth instruction given for the defendant told the jury, that, if they believed from the evidence that the value of the stock yards or pens of the defendant, adjacent to the land described in the petition, would be damaged by such use of the land for street purposes, then the defendant should be allowed the amount of such actual damage. The tenth instruction given for appellant told the jury, that, if they believed from the evidence that the lines of railroad, yard and other properties of the defendant would, as a whole, be damaged in value for storage, elevator, warehouse, side-track, freight house, yard and unloading purposes, by the extension of the street across the yard, main and side-tracks of the appellant, then the appellant should be allowed compensation for such damage or depreciation as would accrue by reason of the extension of the street. The eleventh instruction, given for the defendant, told the jury that, if they believed from the evidence that said ground was within the defendant's yard, and was crossed by two side-tracks of the defendant, and that such side-tracks were in use by the defendant for the storage of cars, and that the use thereof for street purposes would deprive the defendant of the use of the same for the storage of such cars, then the defendant should be allowed such sum as would compensate it for the loss of such parcel of ground for the storage of such cars. These instructions, thus given for appellant, whether in all respects proper or not, were in exact accordance with appellant's theory of the case, and were fully as favorable to it as the evidence warranted.

Appellant also complains, that certain instructions asked by it were refused. These instructions submitted to the jury the question as to the public necessity for the improvement; and also told the jury, that, if the present use of the premises by the railroad company, and the use

of the same for street purposes, would be inconsistent with each other, no damages could be assessed and no condemnation could be had. They were properly refused in view of the considerations already presented.

*Fifth*—It is claimed by the appellant, that no ordinance is shown to have been passed by the city council to extend Prairie street across the property of the company. This objection is without force. As has already been stated, a copy of the ordinance was attached to the petition, which was certified to by the city clerk, and was under the corporate seal of the city. In *Cahill* v. *Village of Norwood Park*, 149 Ill. 156, the same objection was made upon this subject, as is here urged; in that case we said (p. 160): "It is contended that the village failed to show a right to condemn, because it did not offer in evidence the ordinance under which the proceeding was had. The jury was sworn to ascertain and report the just compensation to appellant for the property sought to be taken or damaged. It had nothing to do with the ordinance. * * * The petition set out the ordinance. Its sufficiency to authorize the condemnation proceeding was for the court. All objections to its sufficiency must have been urged before it." The record does not show, that any objections upon this subject were presented to the court below; and it is too late to insist upon them now. The recital of the ordinance, as here made in the petition, is in the manner, which was held sufficient by this court in *Dickey* v. *City of Chicago*, 164 Ill. 37, and the cases therein cited.

*Sixth*—It is said, that there is a variance between the allegations of the petition and the proof upon the alleged ground, that the premises therein sought to be condemned are described as being sixty-six feet wide and one hundred and fifty feet long, whereas the proof shows that the extension of the street across the company's property would be two hundred feet long, instead of one hundred and fifty feet long. No objection of this kind was made

in the court below. The point thus suggested is unimportant, because all the testimony as to the amount of damages was based upon the theory, that the extension of the street would be over a distance of two hundred feet, and because the petition, and the ordinance, and the judgment rendered, all indicate that the extension was to be made from the west side of the right of way to the east side thereof, and from the western terminus of the street to the eastern terminus thereof, as abutting upon the railroad tracks, whether the same was for a greater or less distance. In other words, the material fact was, that the street should be condemned across the tracks or right of way, from the west side thereof to the east side thereof, be the distance what it may.

*Seventh*—It is further objected, that the award of $200.00 was inadequate. The testimony of the witnesses, as to the amount of damages, varied all the way from $24.00 to $450.00. The amount fixed upon by the jury in their award is a fair average of the different amounts testified to. In addition to the testimony introduced before them, the jury went upon the premises and examined them. It is well settled that the damages awarded by a jury in a condemnation proceeding will not be disturbed where the evidence is conflicting, and the jury viewed the premises. (*Chicago, Burlington and Quincy Railroad Co.* v. *City of Naperville*, 166 Ill. 87). The question of the amount of damages was a question of fact for the jury. We are not prepared to hold that the compensation awarded by them is inadequate.

Upon a careful consideration of the whole record, and after a careful study of the numerous points and objections so ably and earnestly presented by counsel for appellant, we have reached the conclusion, that the judgment of the county court should not be disturbed.

Accordingly the judgment of the county court is affirmed.    *Judgment affirmed.*